May it please the Court, my name is Ronald Marmer, and I represent the appellant Saad Nader. Mr. Curtis, who is with me at counsel's table, represents the underwriter appellants, and has requested that he be given several minutes to address the Court on behalf of his clients at the conclusion of my remarks. Are you going to share your time? Yes, we are. All right. How are you going to share the time, counsel? Mr. Curtis is going to take three minutes of your time. All right. Thank you. Mr. Nader appeals from the district court's express and final injunctions, which permanently bar and enjoin him from pursuing any claims against the settling parties. The district court lacked the power to enter those injunctions for two independent reasons. First, the district court lacked jurisdiction because the plan trustee has no standing to prosecute these claims. And second, the district court lacked subject matter jurisdiction because the plan trustee's claims cannot be maintained under the SLUSA statute. Counsel, was the SLUSA argument raised below? I'm sorry? Was the SLUSA argument raised below? Yes, absolutely. The SLUSA argument was fully briefed and addressed to the district court in advance of the court's decisions on the injunctions. Was it raised in the answer? It was not raised in the answer. So if it wasn't raised in the answer, was it forfeited as an affirmative defense? Absolutely not, Your Honor. The issue before the court is whether under SLUSA there is a withdrawal of subject matter jurisdiction on the part of the district court. Our position is that SLUSA is quite clear in the actual language of the statute that it withdraws jurisdiction from the district court and therefore it cannot be waived. You don't see that as an affirmative defense that has to be set forth in the answer in order to be followed through with in district court? Absolutely not. If we are correct, as I believe we are, that SLUSA operates as a withdrawal of subject matter jurisdiction on the part of the district court, there can be no waiver just as there can be no consent. What case are you relying upon for your argument that SLUSA is not a preemptive affirmative defense and therefore cannot be waived? There is to our knowledge and our research no case ever addressing the question of whether SLUSA operates as a withdrawal of subject matter jurisdiction or whether it is in effect a preemption. Are there cases that say it is a preemptive defense? There are cases that use the language of preemption but never say it is a preemptive defense, nor do they ever analyze the question of whether it amounts to a withdrawal of jurisdiction. The statutory language is the starting point, and in the absence of cases is all we have. But the statutory language says no covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party. It says no action may be maintained. That language we submit is consistent with our reading, which is that it is the withdrawal of subject matter jurisdiction. But you're asking, counsel, you're asking us to be the first court in the country to make the ruling that it's not a preemptive affirmative defense, but rather a withdrawal of jurisdiction from a court? You would be the first court to address the question whichever way the court went. There is, to our knowledge, and my colleagues have not cited any authority either, so I take it their research disclosed nothing on this issue as well. There is no court that has undertaken to analyze whether SLUSA operates as the withdrawal of jurisdiction or whether it operates as a preemption. We submit that the language of the statute, which here we are writing on a clean slate, because it says no covered class action may be maintained, that does not sound like we're preempting claims. We do have expressed preemption language in other statutes, and they typically say the actions are hereby preempted. I'm not talking about implied preemption, because this is obviously expressed language. But when you see some of the other statutes where there is like the original statute. Have this particular argument was made to the district court in just the way you're making it to us? Well, we certainly presented it on the papers, and we did attempt to argue it to the district court. There's no doubt that we argued that there is. And the district court just did not address it? Well, in the context of the injunctions, the district court's entire comment is that it has jurisdiction. There was, in addition, a separate briefing on the SLUSA motion, which the district court then just rejected the SLUSA arguments. Those happened at different points in time. But in the context of this precise injunction matter, yes, it was fully presented to the district court, and the district court has one sentence in its injunction, which is that it concludes that it has jurisdiction. Could you just point me in the excerpts of record where your brief is that makes the argument that it's a withdrawal of jurisdiction? Yes. In volume three of the excerpts of record at page E637, that's our objection to the settlement of the Peterson and Hount settlement, and the SLUSA arguments appear within that brief at pages 9 through 16, which are with the, I can give you the E sites. Okay. They begin at E648, and then they continue thereon. That's the actual objection. All right. Thank you. So to answer the Court's question again, because it is subject matter jurisdiction, it cannot be waived any more than it can be consented to. So we get to one other preliminary issue. Sure. And that has to do with your client's standing. Okay. And I assume the issue here from reading the briefs is whether or not your client is prejudiced. And if there's no prejudice, there's no standing. And as I read your brief, what you say is that he's stripped of the right of indemnity or contribution under the language of Waller. And on the other side, they say, no, you don't have a problem because of the judgment reduction credit. Now, I'd like to have you assume the judgment reduction credit would play in. How would you be prejudiced? How would your client be prejudiced? Well, let me start with the very threshold issue Your Honor raises, which is, is there standing for my client? Is there standing for my client? Under Section 1292a1, we are dealing in this Court with the appeal of a final and express injunction. Under the plain language of 1292a1, there is appellate jurisdiction to review every injunction. That means that we do not move to the Carson factors, the Supreme Court's decision in Carson, because that does not deal with express. In other words, look back at this. We have this Court's decision in Page. In the Page decision, this Court distinguishes very plainly between express injunctions on the one hand and those orders that have the, quote, practical effect, close quote, of an injunction on the other hand. If it is an express injunction, then under this Court's decision in Page, that's it. There's appellate jurisdiction by virtue of the language of 1292a1. If, on the other hand, you're not dealing with an express injunction, if you're not dealing with the practical effect of an injunction, then you're kicked over into the Carson decision, the Supreme Court's decision in Carson, grab bag of factors that you go through to determine whether or not there's an injury. And in that setting, you'd look at irreparable harm and so forth. But if it's an injunction, the finding of an injunction, both as a matter of a statutory language under 1292a1 and this Court's decision in Page, we are here, we have an absolute right to appeal. Now, it's hardly for me to answer the question whether when the Congress does something it makes sense or not, but it certainly does make sense. In other words, if one thinks about it, the notion that someone could be enjoined from doing something and the person so enjoined would not have the right to complain about it because the party would say on the other side, well, but you weren't going to do it anyhow or it doesn't really hurt you, just runs counter to all notions of how injunctions operate. It's the ultimate coercive power of the courts. Okay. Let's grant you the point you got standing. You still have to get to the point of how you're hurt. And so maybe you could tell me how your client was hurt. Well, Your Honor, we do say that we, and we cited to the district court the Waller case, that our client is injured in a variety of ways. The first is that he's stripped of his right to take claims. For instance, he could file a suit absent the injunction. My client could file a suit for fraud or negligent misrepresentation against one of the settling parties. My client lost a great deal of money by virtue of his own stockholdings in this company. If the allegations are true about some of the participants here, he could so suit. One of the ---- Just stop right there. You're not talking about cases in which your client might be sued. You're talking about cases in which your client has a right of action against non-settling defendants. Correct. In the absence of this injunction, my client would have the ability to pursue those claims against the settling parties. But those claims had been stripped from him by virtue of this injunction. So, for example, if one of the other officers perpetuated a fraud unknown to your client until just now, he would be unable to sue that other officer if the officers entered into one of these settlement agreements. That's correct. And we have exactly that situation with the chief financial officer of the company. Your Honor says fraud, but, for example, there's no reason why negligent misrepresentation wouldn't be such a claim. My client could, in the absence of this injunction, take an action against the chief financial officer and argue that the chief financial officer engaged in negligent misrepresentation in his statements to him concerning the subject matter at issue. But this injunction wipes that out. Goes to your client personally, or is that one that he suffers as a result of owning stock along with everybody else? No, it would be a result of the fact that because of his personal ownership, yes, it's true that he would have that action. But if it's a statement made directly to him as opposed to everyone else, then obviously that would be unique to him. If the statement is because of the circumstance that the chief financial officer will make direct representations to the client, he would have a standing where, arguably, depending upon the law of negligent misrepresentation, he would not. I want to make sure I understand this. You've argued now two different forms of injury. One, if he has been injured in general along with everybody else who owns stock in Boston Markets, and two, if there was some specific statement that was made to him in his capacity as CEO or president of Boston Markets that he relies upon. Oh, absolutely. It's the second one that's a unique injury to my client, not the first one. Okay. On the second one, does the settlement apply to that kind of a situation? Yes. This injunction absolutely purports to bar that action against my client. Similarly, there's a settling defendant here, which is a law firm. That law firm represented not only Boston Chicken, but my client individually to the extent that my client might seek to take a claim against the law firm based upon either conflicts of interest in that representation or failure to provide adequate representation to him in connection with those matters. That action likewise would be barred. But the injunction itself operates broadly and effectively to strip him of those claims. That's the practical effect that we're talking about. And that's under Waller. What Waller says, you have to show some formal legal prejudice, and formal legal prejudice here we submit exists first, and I understand, Your Honor, wanted to analyze them separately, but first, even under Waller, formal legal prejudice exists by virtue of the fact that an injunction is entered against him. If the court enjoins an individual from doing something that the individual could stipulate, he has no intention ever of doing. Nonetheless, that individual has the right to prosecute an appeal from the injunction under 1292A1 to set aside the injunction if it's invalid as to him on any grounds. And that is precisely the holding of Page. In addition, under Waller, you would have the opportunity to show, and Waller is a separate arm. Okay? We're talking first about injunctions under 1292A1. Waller does not deal with injunctions. Waller is dealing just with settlements. So now we're out from under the doctrinal rules governing injunctions, which are particularized and confer standing here. Now we're under Waller under the law of settlements generally, and the question is when can a non-settling party object? And the answer is one must file one must demonstrate formal legal prejudice. We've satisfied that one here as well, although our position is that by virtue of the injunction arm of this case, it's unnecessary for us to do so. But it is satisfied here for the reasons I've described. I'd like to turn, with the Court's permission, to the issue of constitutional standing under Article III and address that with the Court as well. Our position, as Your Honors are aware of the Standing Excuse me, just so I understand. You're talking here about your standing or the trustees? I'm talking about the trustees' standing under Article III. I want to make sure. Thank you. Right. There certainly are standing arguments all around, although, as we've indicated, we It's a fun case if you like Federal jurisdiction. It has a law school exam quality to it. There's no question about it. The standing issue on the part of the trustee that we want to address, obviously, is our position, as Your Honors are aware from the briefs, are that the tests are set forth both in the Kaplan, the Supreme Court's decision in Kaplan, and this Court's decision in Williams. Williams essentially creates a three-question test that has to be satisfied in this setting. The first is, who is the real party in interest? The second is, are there in-party delecto concerns? And the third is, is there a risk of inconsistent actions? The first test, who is the real party in interest? As applied here, we believe the record is quite clear. The real party in interest is not the trustee. The real party in interest is the beneficiaries of the trust, the creditors, not just because they're beneficiaries of the trust, but because it's a claim that really directly should be raised by them. First, the planned trust was funded by the creditors, initially with a $5 million cost retainer or war chest. That accrues a 20 percent per interest per annum whopping return. Well, you know, these cases come up all the time where the debtor doesn't have any money. And it isn't surprising the creditor is going to come up with money. I don't see where that gets you over the hump, because the creditor is going to have to go through the debtor before they get their money. Is there something about them putting in this litigation money that taints the whole process? I think it's not a matter of tainting the process, but it's certainly one of the factors that one looks at. In other words, if you're funding the litigation, and not only are you funding it, but you're getting a 20 percent per annum preferred return by virtue of the interest rate on that, that transforms you from your typical setting. If you're also, as is the case here, the creditors control a five-person oversight committee, that suggests, again, that that's a factor. But the heart of the issue certainly, Your Honor, and I think this is where Your Honor's questions are headed, are how is it that these creditors really are the real party's interest? Why is it a direct claim by them that should be brought? What is it that makes this a claim that they're bringing as opposed to a claim that the debtor is bringing? And the answer to that is because they're bringing a deepening insolvency claim. And if one looks at the issue of deepening insolvency, first we start with the proposition of deepening and insolvency, right? And then we start with the proposition of deepening and insolvency. And that is a very simple argument. Otherwise, it's not deepening. It's not action. It strikes me your argument is very much like piercing the corporate veil. The corporation is there. It's just a shell. It doesn't have any money. And the trustee is representing the shell. You're trying, as I understand your argument, to pierce that shell or pierce the corporate veil and say it's not really the corporation. It's the creditors. They're getting the benefit. No, I don't think that's correct, Your Honor. And respectfully, the analytical framework first is the Williams framework. And so the question is, who is the real party in interest? And to answer that is not a piercing the corporate veil question. The question is, when you look at the reality of the nature of the claim, is it the kind of claim that could and should have been brought as a direct action by the creditor, or is it the kind of claim that properly is asserted by the debtor? And in the deepening insolvency context, we submit the answer is that must be a direct action by the creditor because the creditors are affected unequally, not comparably. So if one looks at, for instance, the analogy between direct and derivative actions, in this setting, you would not be able to say that a class of creditors was uniformly affected by conduct that deepens an insolvency. The illustration we provide in our opening brief gives a very pointed and vivid example. It is always the case that if one argues for a deepening insolvency, the very predicate of that is an analysis that says you were past the point of no return. Not only were you insolvent, there was no hope, no legitimate range of business judgment that ever could be brought to bear here to take on more debt, and you have, therefore, injured creditors in some increasing amount as a result. The answer to that is those creditors, therefore, have been injured directly and individually in different consequences by virtue of the conduct that's alleged. It is not derivative in its nature. It would not be property of the estate. It would be a direct action. That's consistent with the law in this subject which says that at the point of insolvency, the fiduciary duties shift to the creditors who have a direct action to vindicate a breach. And so what you're arguing here is that any time we're in 7, automatically the creditors have to bring the claim. Absolutely not. We are not saying that. We would say first whenever you're having a liquidation, although that's a relevant factor, first the creditors do not have to bring the claims for garden variety contract actions. Garden variety contract actions, someone fails to provide conforming goods, customers are lost or business is lost. The debtor brings the claim. Could there be a circumstance where a creditor would have a unique claim? Yes, I suppose, if there was some contract that uniquely affected secured rights in a piece of property. But a contract garden variety, that would be an example. A tougher issue, which I do want to front with the court, what about breach of fiduciary duty? Our breach of fiduciary duty claims is the trustee submits always property of the estate. We answer no. They must be inspected under Williams piece by piece. So you could have, for example, a related party transaction that's alleged to be a breach of fiduciary duty. If the consequence of that property was bought or sold at better or less terms than it should have been, there's just a diminution in the value of the estate. Okay. That becomes essentially a debtor-oriented claim. Why? Because creditors participate essentially as a class and, therefore, it is in its nature not direct. But if the claim is unique to the creditor, such that a direct action properly would lie, which in the deepening insolvency we submit must be the case, as our illustration shows, then the direct action trumps and prevails because that's the real party in interest. Under Williams, and I don't want to lose the other two points as my time escapes, there's the imperi delecto concerns. And this is critical here because one of the things that has happened that is absolutely essential to this Court's analysis under Williams is whether the proper parties are confronting one another in court such that the doctrine of imperi delecto is properly applied or is it distorted. And in this instance, if a direct action by the creditors had been maintained against my client, my client would be in a position to assert the imperi delecto defense against the creditor who we submit there's good facts to support new these issues. Now, this Court doesn't have to conclude that we would prevail. Our point is a much narrower one, and that is that when you're focusing on who is the proper party under Williams, who has the standing here, the Court always must be mindful of whether the answer to the standing question has distorted or been faithful to the imperi delecto operation. Counsel, you've used not only your time, but co-counsel's time. We'll give co-counsel two minutes. Thank you. Good morning, Your Honors. George Curtis, Gibson Dunning Crutcher on behalf of the Underwriter Defendants. I'd like to build on Mr. Marmer's response to Judge Wallace's question. The focus of the underwriters is not to deny the trustee in this action the ability to bring claims that are owned by the estate. The focus of the underwriters' argument, the reason we join in this appeal, is because the trustee seeks damages here that do not belong to the estate. They are uniquely the damages of the creditors. In order to state a cause of action, the trustee need not only state a harm, he must state the damages that are attendant to that harm. As the Court in Williams stated, nowhere in the statute, that is the bankruptcy statute there at issue, did the Kaplan Court find any provision enabling the estate. The point that Mr. Marmer makes in his argument that the parties, the appellants, have made in their briefs is that the core of the damages that are at issue here are the losses to the creditors, the bondholders and the shareholders. Not only has Merrill Lynch and have the underwriters been sued by the bondholders and shareholders and resolved that action, the very fact that these damages relate to the creditors themselves, they are their property, not the property of the estate. Were the trustee, and this is the significant issue, were the trustee here to bring a series of tort claims and then seek damages that flowed to the estate, this appeal would not lie. The critical issue here is that the trustee under Kaplan and Williams does not have standing to pursue the damages that he here pursues. Those are the losses to the investors. Is that Article III standing or prudential standing? Those are Article III and prudential standings. I believe, Your Honor, that under Kaplan, under the Article III construction, both under Kaplan, under Hirsch v. Arthur Anderson, the issue here is you cannot segregate the issue of standing to pursue damages from the standing to pursue harm. Were the court to do that, segregate harm from damages, you would have separated the fundamental elements of a cause of action. There cannot be a cause of action without both actionable harm and damages suffered, and our point here is he's got the wrong damages. All right. Thank you, counsel. Thank you. I'm Martin Glenn. On behalf of Appellee Mark W. Stevens, Your Honors, I'm going to use three minutes. Mr. Dangerfield, on behalf of Peterson and Haupt, will use three minutes, and Mr. Buse, on behalf of the trustee, will use the remainder of the time. All right. In my brief time, I want to address one issue, and it really is the question that Judge Wallace raised initially, and that is the standing of the appellants to bring this appeal. It's our position that they do not have the standing because they have not been aggrieved. They have not suffered any harm or injury to any legal right as a result of the approval and bar order that was entered here. Let me make clear. At the district court, on the first hearing on August 19th of 2003, the only objection that the appellants here asserted to the approval and the bar order was standing of the trustee to bring the actions and the solution. And Mr. Marmer raised, the underwriter did not raise, but Mr. Marmer on behalf of Mr. Nadir raised, the solution issue. There was no argument raised that the non-settling defendants were harmed or aggrieved that the settlement was unfair to them in any other way. There was a question raised on August 19th regarding one of the provisions in the proposed bar order. And as a result of that, all of the parties agreed to accommodate the concerns raised by the appellants and modify the language to clarify that not only did they receive the full benefit that would be provided by Colorado law, but actually beyond that. So no issue was raised below. And indeed, if you read the opening briefs here, no issue was raised here regarding the fairness of the settlement or the protection afforded by the to the appellants by the bar order. And I think they've waived that issue. They have not preserved it for appeal. Kennedy. Are you saying that they had a responsibility when entering into settlement with other defendants and they're not involved, that they have a responsibility that will bind them, that they have to object at that time? There was a settlement hearing. There was an approval hearing on notice. They appeared. They objected to the settlement on two grounds, standing of the trustee to bring the actions. And Mr. Marmer raised the SELUSA issue. They did not raise any issue regarding the fairness of the settlement. And, yes, it is our position that at this noticed hearing they had standing to object at the district court. They raised issues. The court resolved those issues against them. They did not raise the issue that Mr. Marmer is trying to raise today. And I believe that issue was waived. With respect to the other issues. When you say today you're talking about his argument that he is unable to sue other people, et cetera? Correct. That was not raised in the district court at the approval hearing. They appeared. They argued at the district court. They did not make that argument. If you look at their opening brief in this court, they did not raise that argument in this court. Mr. Marmer argues that 1292a1 provides appellate jurisdiction from any injunction. That's true, but it doesn't mean that the party who is seeking to appeal has standing to appeal. The cases that address that issue were set out in the Mark Stevens brief at pages 9 and 10 of our brief, where in the second, third and tenth circuits, appeals from partial settlements have been dismissed because the non-settling defendants are not aggrieved because they are adequately protected by the judgment reduction provision. Counsel, are you arguing that if a non-settling party fails to object on a particular basis at a settlement fairness hearing, that precludes a finding of harm to that, of injury? I do. They had their opportunity to raise it below, and they did not raise it below. They didn't raise it here until the reply brief. What case authority are you relying upon for that proposition? Your Honor, I can't point you to a specific case, but I thought it was standard rules of appellate procedure that if you haven't adequately preserved an issue below, when you've had an opportunity to raise it, that the issue is waived. Well, that's for parties. My concern is for when you apply that to a non-party in the context of a settlement hearing. That is a little different wrinkle. That's why I asked if you had a case. This Court's KPRO decision certainly gives non-settling parties standing to object to a settlement. And in KPRO ---- That's a different thing than saying if you don't object on a particular basis at the settlement hearing, that precludes a finding of injury for purposes of standing. I don't see how they can come here for the first time in their reply brief and raise an issue that they haven't raised any time below. I mean, I thought an appellate record is set by ---- I mean, it is not as if there wasn't a hearing in the district court. They were parties to the action. I think your answer is that you don't have a case to cite. I don't have a case, Your Honor. Thank you. With just ---- and I think with respect to 1292a1, as I've indicated, there may be ---- someone may have jurisdiction and standing to bring an appeal from an injunction.  Thank you, Your Honor. Thank you, counsel. Good morning, Your Honors. My name is Mark Dangerfield, appearing on behalf of the law firm of Peterson & Haupt. Peterson & Haupt was one of the defendants in this case and ultimately settled the claims with the trustee. I want to speak very briefly simply to address the public policy issues that are implicated as a result of the arguments here. Under the appellant's theory, if, as they argue happened here, a district court mistakenly finds that a plaintiff has standing so that the case goes forward, then none of the defendants can ever settle the case. They are stuck. They are forced to litigate that case to its conclusion. And that's the dilemma that the settling defendants are faced with here. We tried to buy our peace. We thought we had. The Court blessed the settlement agreement. There were no objections to the terms of the bar order that the Court entered, and we settled it, or thought we had. If what the appellants argue is true, a defendant can't effectively settle a case, and that can't possibly be the law. There has to be a way for a defendant to effectively settle a case, to receive a bar order, as is always done. There has to be a way, but it can't be at the prejudice of other people. Well, that's correct, Your Honor. But that prejudice has to be – that's why there was a fairness hearing held by the district court judge on the terms of the settlement. And it's at that fairness hearing where the appellants in this case have the opportunity to argue whether that settlement is fair to them or not. And they didn't make any arguments that the settlement was unfair. In fact, just to briefly quote what the judge concluded, I'm reading from the transcript of our settlement fairness hearing, and the judge concluded, A review of the papers indicates there are no objections to the fairness or reasonableness of the settlement or to the terms of the bar order. What page are you reading from? I'm reading from page 14 of the August 26th hearing on the fairness hearing. It's an excerpt of record. Yes, Your Honor, it is. It's excerpt record pages. It's from our excerpts of record, tab 1, page 14, from the Peterson and Haupt excerpts of record. Thank you. That's the only point I wanted to make, that as a matter of public policy, it's inconceivable that defendants would not have a way to settle a case properly, and that's what's at stake here. Thank you. I think the only thing they're objecting to is the broad injunction enforceable by contempt, barring claims for contribution, indemnity or otherwise. Would you disagree with that? Well, that's what they're objecting to now. But, number one, they didn't object to that at the time of the fairness hearing. And, number two, that type of objection courts have held doesn't amount to prejudice where there's a corresponding judgment reduction credit built into the settlement, as there was here. What case are you relying upon? Zupnik? One of the cases would be the Zupnik v. Fogel case, 989F2-93. It's a Second Circuit case which discusses how, when there is a judgment reduction credit, there is no prejudice to a bar order. Was there a broad injunction in there, as there is in this case? I frankly don't remember whether there is or not. Typically, those are included. Thank you. Thank you, Your Honor. If it pleases the Court, my name is Leo Buse. I'm here on behalf of the trustee. You ask Mr. Glenn about cases relating to objecting defendants asserting for the first time on appeal or in their reply. There are two Ninth Circuit cases that we have cited at page 24 of the brief on that very subject matter. The first one is Doi, D-O-I, v. Haluki Lani Corporation, 276F3-1131-2002. The second one, which holds exactly that, is Slavin v. American Trade Transportation Company at 146F3-1066-1998. So, counsel, what argument is it that you are asserting that was raised for the first time in the reply brief? They raised for the first time the notion of being harmed by an injunction. They didn't raise that in the lower court. No one raised an argument about fairness or reasonableness with the bar order. And, in fact, they didn't raise that until the reply brief in this matter. Reply brief on appeal. Reply brief on appeal. But it's worse than that. If anybody had analyzed that, the analysis is very simple. If you look at the time frame in which these events occurred, Mr. Nadir, who raises this issue, had left the company in 1997. Bankruptcy occurred in October of 1998. The facts that eventually unfolded in a very few short months, which he already knew about at the time he was the chairman and CEO of this company, are not claims that he could then, because of what Mr. Marmer says is an imperi delicto problem, he can't sue anybody, he can't sue his lawyers, he can't sue anybody because he knows, number one. And that would have been analyzed below and it would have been analyzed in the briefs. But, secondly, what statute of limitation is not now told or, I'm sorry, not now expired? 1997, 1998? And what claims have they ever attempted to bring? Well, there may be fraud claims and you don't have any statute doesn't run until you have reasonable notice. We can't – we can't divine what there might be out there. Well, Your Honor, let me tell you the problem with that. The amount of discovery that's been done in this case would not give them one conceivable way in the world to claim that there has been any fraudulent concealment. Maybe so, but that's not before us because we don't know that. And they didn't raise that in front of Judge Rosenblatt either because if they had, we would have had a hearing on that and we would have put Mr. Nader on the stand and we would have said, what claims do you think you've got against the lawyers? What claims do you think you've got against other officers, these settling defendants? And he would have had to say, I've got a claim or I don't have a claim. And then there could have been an analysis. And if he had a claim and it was separate and independent from what we're talking about here, that bar order might have had different language and everybody might have been very satisfied with that. But what they want to do is they want to come by and say at the end of the game, in a reply brief, in the Ninth Circuit for the first time, gee whiz, an injunction means we're enjoined from bringing a lawsuit on some other theory. You don't even see in their papers in the reply brief, Your Honor. Kennedy, let me ask you a question. This is against one individual about not raising the issue. There are some other appellants, the settling defendants. Did they raise the issue? They did not. And they don't even raise that today. Well, it's whether they – we don't require them to raise every issue orally or we'd be here for hours. But they did not raise it in their briefs and did not raise it below. That's correct. What Mr. Dangerfield cited to you where he said – So what you're arguing, if I understand it correctly, that there's no standing on any of the appellant's part and, therefore, that we should not get to any of the remaining issues before us. Well, Your Honor, that's a very good question. We have made two additional settlements. And we've settled with two others. And those are on appeal, not on a question of fairness and reasonableness, but on a question of standing and SLUSA. So we're going to face an appeal every time we go through this whenever we settle with any defendants. Now, we may be through settling. We may go try the rest of the defendants. I don't know the answer to that. But you've got another Ninth Circuit appeal. Well, that may be. But if there's no standing, we can't get to SLUSA, can we? That's right. If the defendants have no standing? If they have no standing or we have no standing. Let me deal with – I don't think they have standing because I think they waived it. Then if that's true, then we would never enter a judgment on the rest – an opinion on the rest of the issues raised before us. That's probably true. Let me turn you to another area, and that's the area of damages. I understand what you're saying, but I have difficulty being able to conceptualize it. This issue of increased debt. It strikes me that the increased debt is a problem with the lenders. Now, I may – I understand your argument, and it may be that that is a problem with the corporation. But I thought just initially, before I read all the arguments, that the damage to the corporation would be collateral damages of some type. And maybe those collateral damages are the increased debt. But if you just say increased debt and nothing else, I have difficulty seeing where that is a corporate harm as distinguished from a creditor harm. Could you respond to that? Sure. We're clearly not saying increased debt is our damages. Here's what our damages are. We went out and borrowed from several sources – banks, public debt, and trade creditors. We had about $1.3, $1.4 billion in debt. We took the money in, meaning the officers and directors took it in. And they then wrongfully dissipated over $800 million of those monies that they had taken in and loaned it in totally worthless loans to parties in which they had a related direct financial interest. Mr. Nadir had an interest in the borrowers that took the money from Boston Chicken, looting, dissipation, waste, breach of fiduciary duty. And by doing that, they burdened the company with this huge debt and dissipate the assets. And what our damage expert, Dr. Michael, has done – and it's very clear – he's done an evaluation of what this conduct has done to the company. He took a business enterprise value at the time they breached their duties, where they breached their fiduciary duties to the company, and compared that business enterprise value with the business enterprise value at the end of the day. And the difference is the deepening insolvency of Boston Chicken. Why is that necessarily so? I understand the valuation of when it started and the valuation now. That makes sense. That's collateral damages to the corporation. But why is the measurement of those damages the increased debt? It's not. Okay. That's not what our damage study says. We take a business enterprise value. We take the fair value, calculate it. You have to take the debt part of the balance sheet as part of it. You take the asset. You subtract the debt. The difference is a plus or minus number. Right. That's a business enterprise value. And you weigh the net. You do that at the time the particular defendant creates or breaches their duty to the corporation, when they loot, when they do the dishonest things they do. And then you compare that to the end of the day. Yes. And you take those and you do the same analysis then, and the difference is the damage to the company. And it may not be the increased debt. It may not be the increased debt. In fact, it isn't the increased debt. The deepening insolvency is a different number than the increased debt. We can calculate the increased debt quite simply. So if it calculates out to more than the increased debt, then the corporation is going to end up with something that the creditors aren't going to get. Well, with a little bit of luck, and if the jury buys all of our positions, we may not only have distributions for the bank debt that they complain about, but the public debt and the shareholders. The corporation is damaged as a result of the deepening insolvency, as I described what our expert has done. And if we're successful in recovering that, we'll have distribution to a number of creditors and perhaps shareholders. I hope that answers the question. It is not just an increased debt notion. I understand your argument. They would like to say that. I have 59 seconds left. I guess what I would really like to do is deal with one of the ñ I'd like to deal with the Williams case, which they really misconstrued. I'd like to deal with Williams and Kaplan. In Williams, what happened is the trustee took assigned claims. There were bondholders out there who had their own claims, just as Mr. Marmer described, and the trustee was given an assignment of those claims in Williams. And the Ninth Circuit said because of the way those assignments were put together that that was improper. The trustee was going to go be the lawyer, do the work, and then when the money came in after all the expense of the litigation was finished, then the net proceeds after that expense was going to go back to those creditors. Well, that's bringing a creditor's claim. We're not bringing a creditor's claim. We don't have any assigned claims in this case. We are bringing the claims that the corporation has against its officers, its directors, and its professionals for their malpractice, for their waste, for their dissipation, measured by a deepening insolvency theory of damages. And that's Williams. When you read Williams, it is an assignment case. They then cite Kaplan. We'll go to the creditors. Well, what happens in our case when we get through, whatever happens will go pursuant to the plan of liquidation. It will go to creditors. It will go to administrative expenses. It will go to shareholders if there's enough. There's a ---- Does it go to the creditors first? I think it goes to administrative and then the creditors. But the answer is the creditors will ---- And then the shareholders after that? And then the shareholders after that. Is it a hundred cents on the dollar to the creditors? Or is there some other plan for distributing the assets? There are several tranches of how various creditors receive various portions of money, and I wish I could give you the exact numbers, but like the first I'm going to say $50 million goes to the two creditors they really don't like, the two banks, Bank of America and GECC. Then the money starts becoming distributed to other tranches of creditors, and now ultimately there's anything left over to shareholders. A typical plan of liquidation that was litigated before Judge Case, the bankruptcy court, as to how that was going to take place, if and when there was any recoveries, including any recoveries from sales of assets. Let me not sit down, however, before I deal with Kaplan, and I want to put Kaplan in its context. What they fail to tell you is if you look at footnote 20 of Kaplan, it makes it crystal clear. I'm over my time, but let me just, footnote 20 makes it crystal clear that the claims that were assigned claims from the bondholders were not allowed to go forward, but all of the claims where the company is damaged was allowed to go forward, and the assets in Kaplan, the assets in Williams on the claims that were allowed to go forward were distributed there in a normal plan of liquidation. My time is up. Thank you very much. Is that footnote 20? That's footnote 20 at page 430. 430. Thank you. Thank you. All right. We'll give you one minute for rebuttal. Thank you, Your Honors. I would like to address Mr. Buse's statement to the Court regarding the nature of the damages sought, that somehow these are not increased indebtedness. At the record excerpt 662-80, 81, that is 681 and 682, the Michael damages analysis is presented, and I need not elaborate that save to direct the Court to Exhibits 2B and 2, I'm sorry, 3B. What the trustee has done is to say here are the damages that the corporation has suffered, and as of particular dates, as Exhibit 2B recites, he walks through every public offering and every financing by the bank. In other words, he says the creditor loans to us are the measure of our damages. He then, at the conclusion, that is the overwhelming bulk of his damages here, what the appellants are challenging here is the standing of the trustee to assert as the overwhelming majority of his damages the creditor loans for the very reason that Mr. Marmer alluded to when the appellants' papers made clear. Those creditors stand in a relationship to Boston Chicken and have their own claims, not only against Boston Chicken, but against anyone else. Allowing the trust to assume those damages as its own is contrary not only to Kaplan and the analysis of Kaplan and Williams, it also fouls up the entire issue of the various defenses that are available between and among the creditors themselves and the defendants in this action. Let me ask you, counsel, you say the overwhelming damages go to the creditors, and that's not surprising. The creditors have got a good position on it. Suppose there is some money left over that goes to the corporation. That is, in the package, a lot of it's going to go out, but some benefit comes to the corporation. Is that sufficient to give standing to the trustee? As to damages suffered by the estate itself, he would have the standing to pursue those damages. But contrary to Mr. Buse's assertion, the trustee is seeking the damages of the creditors as his own. And if I could just give the Court one example. What you're saying is that he's really not going to look at the corporation and the problems of the corporation. He's going to go straight into the amount of the debt. And you have only to look at the Michael analysis to see that clearly. I understand. Counsel, are you prepared to address the argument that no assertion of injury from the injunction was raised until the reply brief? Mr. Marmer is. All right. Thank you. May I just conclude with one example? Briefly, Counsel. 30 seconds. Thank you. It is this. Were the trustee to be suing on tort claims that belonged to the estate and brought in monies that were related to those injuries, those monies are the trustees to pursue, would go to the corporation, and would flow out however it might through the plan. Our point is not that these monies will ultimately flow through the corporation. That's typical of a bankruptcy estate. Our point is that the fundamental nature of the damages that are being sought do not belong to the corporation and are subject to suit by the creditors and have been sued upon. We understand your argument, Counsel. Thank you, ma'am. All right. Briefly, Counsel, could you just answer the question regarding the opposing counsel's assertion that no assertion of injury based on the injunction was raised until the 11th hour? Yes. We specifically objected to an injunction. There's an entire section of the argument appears at E640 that says, Plaintiff lacks standing to seek findings of fact, a bar order, and an injunction. Well, the issue was whether or not you were harmed by the injunction, not whether or not there was standing to pursue the injunction. And at supplemental S.E. 453 begins a presentation by Mr. Stoler in the Arizona Court where he starts discussing the Waller case, goes through some other cases, and is talking about the fact that we have standing because there's going to be a bar to claims. That's what he's addressing. But critically, and this was something that got glossed over, there are two different avenues here that must be analyzed separately. The first is if you are the party subjected to an injunction under 1292A1, that confers standing. You don't have to show you're injured in addition. The injunction itself is the basis for your standing. You're a party, but you're not a party. If you're the enjoined party, if you are enjoined, if you are subject to an injunction, it is inconceivable, if one thinks about it, that you could be subject to an injunction. The injunction is directly pointed at you, and yet you are said not to have a right to reveal it. It can't be. And that's what this Court says in Page. It's irrelevant if it is an express injunction that we look at the rest of it. Are you saying you don't have to raise the issue? Oh, no. I am saying. Okay. I think the question we asked was not the merits, but where it was raised. Can you tell us where in your opening brief you raised the issue? The issue of the injury? Yes. There is nothing in the opening brief on that. I don't want to mislead the Court at all on that. The point is that under 1292A1, which is in the opening brief, there's a direct injunction pointed at my client. That under 1292A1 and under Page renders standing sufficient. But if the issue is not raised in the opening brief, we usually consider it waived. How would you respond to that? Oh, because, Your Honor, what we are obligated to do is cite in our jurisdictional statement the basis for being before the Court, which we did. We cited 1292A1. That doesn't raise the argument. Citing a statute doesn't raise the argument of whether or not you were injured by the injunction. Again, Your Honor, the injury adheres in the injunction itself. The separate question is the Waller question. The separate question is whether a non-settling party in the absence of an injunction has a standing to complain. In the absence of an injunction, we inspect Waller factors. And as I point out, Waller was raised below. Our argument before this Court is that by virtue of the express injunction, that is in and of itself sufficient to confer standing upon the party and that's sufficient. I think you're missing the point. You're making a good argument, but you've got to come to grips with it. We have legions of cases saying if you do not raise the issue, regardless of if it's a good or bad issue, if you don't raise the issue in the opening brief, it's waived. They have complained that that is the situation here. We have to confront it. But, Your Honor, that formulation sharpens it up, and I appreciate it, because the answer is the opening brief very specifically says that we are here and harmed by virtue of an injunction entered against us, that the district court lacked the ability to enter that, and, therefore, we should be able to proceed. That is very ---- The position is you didn't have to assert in the opening brief how the injunction harmed you, that just the fact that the injunction was entered gave jurisdiction over the appeal. Correct. Absolutely. Until there is a joining of the issue by the other side, in this case we submit unsuccessfully, that's it. The injunction under 1292a1 is itself sufficient to confer it. You do not need to show more. And Page says that. Page, this Court's decision, Page very clearly says it is irrelevant to look, in the context of an express injunction, to the Carson cluster of factors which deal with whether there is an irreparable injury or some further harm. In other words, if someone enjoins me ---- I understand that. But where ---- if I was going to look in your brief, what page would I look at to show me that you've adequately raised the issue? Well, the adequately raised the issue of 1292a1 is, I would say, page 13 of our brief where we say the district court lacks jurisdiction to enter findings of fact, a bar order, and an injunction. When we go through the statement of the case where we're describing what's involved in it, we explain what the nature of the injunction is. When we talk about in the imperi delecto analysis in our opening brief how it is that we are no longer going to be facing the correct party by virtue of the district court standing, we're explaining how we're injured in effect by what the district court has done. That's throughout the brief. The specific feature, because we're narrowed down and we're mixing two different issues here. We have counsel over here arguing, well, you needed to raise as a precise issue below that the scope of the injunction was too broad. And if you didn't raise below that the scope of the injunction is too broad, then you lack standing to prosecute an appeal from that injunction to this Court. That's their argument. That's wrong. If there is an express injunction prohibiting us from doing something, that in and of itself gives us the right under 1292a1 and this Court's decision in page to come in this Court and say dissolve the injunction for any reason on which it's invalid. Did you raise that issue in the Fairness hearing? Which issue? I'm sorry. The issue you're just talking about. The injunction is too broad. Did you raise that? We – in the second injunction hearing, there's – remember, you have multiple injunction hearings, Fairness hearings. But we want the Fairness hearing. The Fairness hearing, which is the site I gave you in the supplemental exhibit,  the injunction. The breadth of the injunction, I will tell you, he does not fairly raise. I'm not submitting that. I will tell you, as Mr. Buse candidly admits, that there are a series of additional cases where this will come up. But on this one, let's be quite clear. If the answer is that below, we had to show not only that we were enjoined, but that by being enjoined, that hurt us more. No. The purpose of the Fairness hearing is to raise any objections you have to the proposed settlement. Our question simply is, at the Fairness hearing, did you raise as an objection that the injunction was too broad? Absolutely not. Absolutely not. And our argument to Your Honors is that when you object at a Fairness hearing to the court having jurisdiction both on standing grounds and on subject matter grounds, the court is without authority to proceed to make findings of fact or enter an injunction, and that that can't be waived. Let me ask you this. Is it your position or let me ask you this. If we conclude that there is jurisdiction over the appeal of the injunction, but that you forfeited your right to address the broad nature of the injunction, what would be your response to that? I think the answer is that the court would then still have before. Once the court concludes that we're properly before this appellate court looking at an injunction, then the issue of the jurisdiction of the court below absolutely must be inspected by the court, even if we didn't write it. If it occurred to Your Honors in bench conference independently that there was a lack of Article III standing or a lack of subject matter jurisdiction, the court would have to reach it. Is that a jurisdictional issue? Absolutely. The breadth of the injunction? Why is that? No, no, no. I did not mean to say that, and if I did, I apologize. What I'm saying, I understood Your Honor to say if the court concluded that we were But the court concluded that we had not fussed about below the scope of the injunction, would the court then still have an obligation to address the Article III or subject matter jurisdiction? My question was would the court still be obliged to address the breadth of the injunction? No, because the court would address the issues of the jurisdiction of the court below. If the court concludes that the court below lacked jurisdiction, the injunction would be dissolved. If the court concludes that there was jurisdiction, Article III jurisdiction and subject matter jurisdiction below, then the court would not entertain an issue about the breadth of the injunction. All right. I understand your position. All right. That concludes the argument on this case. The case just argued is submitted by the Court. That completes this Court session for today. We are on recess until tomorrow at 9 a.m. Good argument. Thank you.
judges: Wallace, Rawlinson, Bybee